**FILED**

MAR **0 8** 2019

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

JANE DOE n/k/a M.E., )
)
    *Plaintiff*, )
)
v. )   Civil No. 5:16-cv-01233-OLG
)
EDGEWOOD INDEPENDENT )
SCHOOL DISTRICT, et al., )
)
    *Defendants*. )

## MEMORANDUM OPINION AND ORDER

On this date, the Court considered Defendant's Motion for Summary Judgment (docket no. 102) and Defendant's Motion to Strike (docket no. 106). Having considered Defendant's motions and the parties' briefing, the Court finds that (i) Defendant's Motion for Summary Judgment should be granted in part and denied in part, and (ii) Defendant's Motion to Strike should be granted in part and denied in part.

## BACKGROUND

On December 5, 2016, Plaintiff filed the pending lawsuit. *See* docket no. 1.[1] The record indicates that Plaintiff was subjected to a pattern of sexual assault and harassment when Plaintiff was a student at Memorial High School, an Edgewood Independent School District ("Defendant" or "EISD" or the "District") school. Specifically, Plaintiff was the victim of sexual assault and/or harassment by two former EISD employees: Marcus Revilla and Manuel Hernandez.

---

[1] Plaintiff's Original Complaint was filed on December 5, 2016, but it was superseded by Plaintiff's First Amended Complaint. *See* docket nos. 1 & 11. On December 15, 2017, Plaintiff filed her Second Amended Complaint. *See* docket no. 47. Any references to "Complaint," herein, refer to docket no. 47, Plaintiff's operative, Second Amended Complaint.

Following Plaintiff's enrollment at Memorial High School in 2012, Hernandez, an officer for the EISD Police Department, began a pattern of sexual harassment in which he would—among other things—detain Plaintiff in his office, tell her of his feelings for her, and improperly touch and/or grope her. *See* docket no. 105-18. Beginning in 2013, Revilla, Plaintiff's chemistry teacher, began a course of sexual harassment and abuse of Plaintiff. *See* docket no. 105-24. As a result of the alleged sexual abuse by Revilla, Plaintiff became pregnant on or around December 2013 or January 2014, and Revilla's abuse continued until March 2014, when he was arrested. *See id.* Record evidence indicates that Hernandez discovered Revilla's abuse of Plaintiff, but rather than reporting or stopping the abuse, Hernandez used the information to coerce Plaintiff into performing sexual acts with him. *See id.* Following his arrest in 2014, Revilla pled guilty to state and federal charges related to his relationship with Plaintiff and his possession of obscene material. *See* docket no. 105-45. Hernandez was also arrested in 2014, and Hernandez was subsequently found guilty of sexual assault of a child. *See* docket no. 105-44.

Plaintiff alleges that during the course of the abuse, harassment and/or molestation, several reports were made to teachers, supervisors and the school's principal, but that EISD employees failed to adequately respond to the information. *See* docket no. 47 at ¶¶ 21-55. Specifically, Plaintiff asserts that Principal Michael Rodriguez, EISD's former in-house counsel Don Walheim, Officer Hernandez and/or other EISD officials (i) had "notice" of Revilla's sexual harassment and/or abuse of Plaintiff or other students and (ii) failed to adequately respond to stop the abuse and harassment. *See* docket no. 105 ¶¶ 12-29. Plaintiff contends that the relevant "notice" came both in the form of information related to Revilla's relationship with Plaintiff and in the form of information related to a January 2014 investigation after a separate student was

invited to Revilla's residence. *See id.* at ¶¶ 23-26. On those bases, Plaintiff asserts a claim against Defendant under Title IX, 20 U.S.C. § 1681, *et seq.*

In addition to Plaintiff's allegations regarding EISD's notice of Revilla's conduct and its failure to act, Plaintiff also asserts claims pursuant to 42 U.S.C. § 1983 based on EISD's (i) training practices, (ii) hiring and screening practices, and (iii) sexual harassment policies. With respect to the District's training practices, Plaintiff alleges that the District failed to adequately train its employees as to the reporting requirements involving suspected sexual harassment or assault. *See* docket no. 105 ¶¶ 51-54. In support, Plaintiff directs the Court to evidence indicating that a second teacher at the school, Yvette Black, heard rumors regarding a relationship between Revilla and Plaintiff in December 2013, but did not immediately report the rumors to school administrators. *See id.* at ¶ 52. With respect to the District's hiring practices, Plaintiff's § 1983 claim asserts that the District's inadequate hiring procedures resulted in Officer Hernandez being hired despite the obvious risk he posed to students like Plaintiff. *See id.* at ¶¶ 35, 40. Specifically, the record indicates that—while serving as an officer with the San Antonio Police Department ("SAPD")—in 1983, Hernandez was suspended after he was found guilty of violating department regulations based on conduct involving the sexual assault of a minor who he had arrested. *See* docket no. 105-4. Hernandez was also arrested for "official oppression" in relation to that incident (*see id.*); however, it appears he was ultimately found not guilty of the *criminal* charge (*see* docket no. 102-56). In addition, the record indicates that Hernandez (i) had been arrested on at least one other occasion (*see* docket no. 105-4), and (ii) had caused concerns and/or faced discipline related to sexual harassment or advances while employed by the University of Incarnate Word Police Department ("UIWPD") and the Texas State University Police Department ("TSUPD"). *See* docket nos. 105-4, 105-6 & 105-7.

On December 20, 2018, EISD moved for summary judgment as to each of Plaintiff's remaining claims.[2] *See* docket no. 102. After the parties agreed to a joint extension, Plaintiff filed a response opposing EISD's summary judgment motion on January 17, 2019.[3] *See* docket no. 105. On January 31, 2019, EISD filed a reply in support of its motion for summary judgment. *See* docket no. 109. In addition, EISD filed a motion to strike certain of the exhibits and information Plaintiff relies upon in response to EISD's motion for summary judgment. *See* docket no. 106. Plaintiff responded to the motion to strike on February 14, 2019, and EISD filed a reply on February 21, 2019. *See* docket nos. 111 & 113.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c). In making the determination of whether a genuine issue of material fact exists, the court reviews the facts and inferences to be drawn from them in the light most favorable to the non-moving party. *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co., Inc.,* 336 F.3d 410, 412 (5th Cir. 2003).

At the summary judgment stage, the movant bears the burden of identifying those portions of the record it believes demonstrate the "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir. 2005). However, the movant need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden "by pointing out 'the absence

---

[2] At prior stages in the litigation, this Court either dismissed (or Plaintiff withdrew) other of Plaintiff's claims and/or requests for relief. *See* docket nos. 16, 43, 44 & 60.

[3] Plaintiff's response withdraws Plaintiff's § 1983 claim premised on the District's sexual harassment policies. *See* docket no. 105 ¶ 55.

of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)). If the movant satisfies its burden, the non-moving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted); *see also Lincoln Gen. Ins. Co.*, 401 F.3d at 349. At the summary judgment stage, the non-movant cannot meet its burden with "conclusory allegations" or "unsubstantiated assertions." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey,* 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "As to materiality, the substantive law will identify which facts are material." *Anderson,* 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Pursuant to Federal Rule of Civil Procedure 56(c), a party may object to material being cited to support or dispute a fact related to a summary judgment motion if the party contends that the material could not be presented in a form that would be admissible in evidence. Upon motion, the court may strike evidence that is inadmissible, improperly authenticated, or

otherwise incompetent. *See United States v. Thompson*, 749 F.2d 189, 193 (5th Cir. 1984). On the other hand, inadmissible documents may be considered by the court in ruling on a motion for summary judgment if the documents are not challenged. *Perez v. Alcoa Fujikura, Ltd.*, 969 F. Supp. 991, 998 (W.D. Tex. 1997).

## ANALYSIS

Before addressing the merits of Defendant's Motion for Summary Judgment, the Court will first briefly address Defendant's Motion to Strike.

### I.  MOTION TO STRIKE

Defendant seeks to strike many of the documents relied upon by Plaintiff in response to Defendant's summary judgment motion. *See* docket no. 106. Defendant groups the materials largely in two categories. First, Defendant seeks to strike evidence related to Officer Hernandez's prior background because Defendant asserts that (i) it is not relevant or probative to the issues at hand, and/or (ii) it contains inadmissible hearsay. *See* docket no. 106 ¶¶ 2-4. Second, Defendant seeks to strike numerous documents involving FBI, police, or District investigation reports, contending that those documents also contain inadmissible hearsay of third-parties. *See id.* at ¶¶ 5-7. Plaintiff generally responds that she is not relying on the third-party statements for the truth of the matters asserted, and therefore, a blanket hearsay exclusion should not bar the Court's consideration of the material. *See* docket no. 111.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Generally, hearsay is not admissible unless stated otherwise by a federal statute, the Federal Rules of Evidence, or other rules of the Supreme Court. *See* Fed. R. Evid. 802. "Hearsay" is a statement that: "(1) the declarant does not make while testifying at the

current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

Upon a review of the record, it is clear that both parties overstate their respective positions. Notwithstanding Plaintiff's general assertion that certain of the third-party statements are not relied upon for the truth of the matter asserted, it is apparent that Plaintiff *does* rely on inadmissible hearsay in some portions of her briefing exactly for that purpose. Thus, in light of the Motion to Strike and Defendant's objections, such information will not be considered in this Court's analysis. *See* Fed. R. Evid. 801.

However, numerous of the reports and documents relied upon by Plaintiff have probative value and are themselves admissible, even if they also contain information that would be inadmissible or overly prejudicial if used for another purpose. For example, documents regarding prior employers' views of Hernandez are admissible because they indicate what EISD would have learned had they sought additional information from those individuals, *regardless* of whether the prior employer's report or opinions were accurate.[4] For that reason, Plaintiff is not relying on the material to prove the truth of the matter asserted. Accordingly, with respect to the information regarding Officer's Hernandez employment (Plaintiff Exhibits A-2, A-3, A-5, and A-10), the Court will **DENY** the motion to strike, and additional information regarding the Court's determination is included in notes 18 & 20, *infra*. To the extent that Defendant has *specific* objections to information contained within the exhibits or contends that the way the

---

[4] Notably, Defendant itself relies on a third-party statement of the student who travelled to Revilla's residence in January 2014. *See* docket no. 102-36; docket no. 102-37. Such information is relevant and probative in this case not because it is used to prove what the student says is *true*, but rather because it demonstrates the information the District had available regarding Revilla at the time of its investigation. Thus, both the documents that Defendant relies upon *and* the documents Defendant moves to strike offer probative value outside of the truth of the matter asserted.

material is presented to the jury may impact the probative-prejudicial balance, those concerns can be addressed prior to or at trial.

Similarly, FBI, police and District investigation reports are generally admissible under Fed. R. Evid. 803(8), and it is only when Plaintiff relies on certain third-party statements contained in those reports *for the truth of the matter asserted* that portions of the reports become inadmissible for that purpose. For that reason, the Court will also *generally* decline Defendant's invitation to strike Plaintiff's exhibits involving police, FBI, or District investigation reports (Plaintiff's Exhibits A-4, A-8, A-16, A-18, A-20, A-21, A-22, A-23, A-24, A-27, A-28, A-29, A-30, A-31, A33, A-41). Notably, many of the "third-party" statements contained in the reports are statements by Plaintiff, who Defendant has had an opportunity to depose. *See, e.g.*, docket no. 105-18 (Plaintiff's Exhibit A-16); docket no. 105-24 (Plaintiff Exhibit A-22).[5]

Accordingly, the Court will **GRANT** the Motion to Strike *only* with respect to the specific instances in which (i) Plaintiff has relied on inadmissible third-party statements for the "truth of the matter asserted," and (ii) such statements—if admissible—might impact this Court's determination. The Court's specific determinations involving this evidence can be found in note 9, *infra*. For the purposes of this Order, the Court finds it unnecessary to address the merits of Defendant's motion as it relates to other potential statements that may be inadmissible hearsay that (i) Plaintiff has not relied upon in its motion for the truth of the matter asserted or (ii) would not impact the Court's conclusion even if it were considered. To the extent Plaintiff tries to rely on inadmissible hearsay from any of the above documents for the truth of the matter asserted at trial, Defendant may certainly raise a *specific* objection at that time. However, because the documents are admissible for some purposes under Fed. R. Evid. 803(8) and potentially other

---

[5] Defendant does not direct the Court to any conflicting testimony from Plaintiff from her deposition or otherwise.

hearsay exceptions,[6] the Court will **DENY** the Motion to Strike to the extent Defendant seeks to wholesale strike the exhibits from the record.

Finally, as discussed in more detail below, *see* Section II.A.2, *infra*, the Court will provide Plaintiff with a final opportunity to procure admissible, competent testimony as to the information for which the Court has granted Defendant's Motion to Strike. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir. 1991) (stating that if evidence is inadmissible for summary judgment purposes, party opposing summary judgment may move for a continuance so that affidavits or otherwise competent evidence may be collected). Additionally, although Defendant re-urges the issue as part of its Motion to Strike, the Court will address each party's challenges to the opposing party's experts separately, as set forth in the Conclusion of this Order.

## II. MOTION FOR SUMMARY JUDGMENT

EISD seeks summary judgment on each of Plaintiff's remaining claims. The Court will address each claim in turn.

### A. Plaintiff's Title IX Claims

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A student who is sexually abused by a school employee can recover from the school district under Title IX if the "school district actually knew that there was a substantial risk that sexual abuse would occur." *Garcia v. Navasota Indep. Sch. Dist.*, Civil Action No. H-09-3892, 2010 WL 518759, at

---

[6] For example, Fed. R. Evid. 807 provides for a residual hearsay exception when "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice."

*2 (S.D. Tex. Feb. 2, 2010) (citing *Rosa H v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 652-53 (5th Cir. 1997)). To recover damages from a school district for a teacher's sexual abuse of a student, the plaintiff must allege and prove that "(1) a school district employee with supervisory power over the offending teacher (2) had actual notice of the [abuse] and (3) responded with deliberate indifference." *King v. Conroe Indep. Sch. Dist.*, 289 F. App'x 1, 4 n.3 (5th Cir. 2007) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

A school district can be liable for teacher-student sexual harassment under Title IX only if the school official who had actual knowledge of the abuse and who failed to take action was (1) invested by the school board with the duty to supervise the employee and (2) had the power to take action that would end such abuse. *See Rosa H*, 106 F.3d at 660. This standard "circumscribes those school employees in the chain of command whom the school board has appointed to monitor the conduct of other employees and, as distinguished from reporting to others, remedy the wrongdoing themselves." *Id.* This limitation is meant to ensure that a district's liability based only on the acts of its subordinates is imposed only where the district's "practical control [is] sufficiently close to reflect [the district's] intentional discrimination." *Id.* Finally, the Fifth Circuit has made clear that "the deliberate indifference standard is a high one," and liability does not attach where the official with supervisory authority responds reasonably to a risk of harm, "even if the harm ultimately was not averted." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000).

Plaintiff's Title IX claim alleges that "Defendant EISD, Principal Rodriquez [sic], and Officer Hernandez had actual knowledge of abuse and were deliberately indifferent to the abuse and the safety of minor students at Memorial High School, including but not limited to the plaintiff." Docket no. 47 ¶ 57. Accordingly, the Court will address Plaintiff's Title IX claim with

respect to the knowledge and response of Officer Hernandez, Principal Rodriguez, and the other relevant EISD employees.

### 1. Title IX Claim Premised on Officer Hernandez's Knowledge

Plaintiff's first theory under Title IX asserts that EISD is liable because Officer Hernandez failed to adequately respond once he was aware of Revilla's sexual abuse of Plaintiff. Plaintiff notes that EISD officers are—per department policy—vested with the authority to "enforce the rules and regulations promulgated by the Board of Trustees" and "arrest without a warrant a person who committed a felony." *See* docket no. 105-47. Accordingly, Plaintiff contends that Officer Hernandez is an "appropriate person" under Title IX, because he (1) was "invested by the school board with the duty to supervise" Revilla and (2) had the power to detain Revilla or take other action that would have ended the abuse. *See* docket no. 105 ¶ 19.

Defendant asserts that Officer Hernandez is not an "appropriate person"—for the purposes of EISD's Title IX "notice" or "knowledge"—on two bases. First, Defendant notes that the Fifth Circuit has held that "Title IX does not impose liability on a school district when the only employee or representative of the district with actual knowledge of the molestation was the perpetrator himself, even if the perpetrator had authority to institute corrective measures on behalf of the district." *Salazar v. S. San Antonio Indep. Sch. Dist.*, 690 Fed. Appx. 853, 854-55 (5th Cir. 2017). Thus, Defendant contends that "[a]s wrongdoers, neither Revilla's nor Hernandez's knowledge is pertinent to the Title IX actual notice analysis." *See* docket no. 102 ¶ 9. Second, Defendant asserts that there is no evidence that Hernandez was specifically vested with the duty to supervise Revilla and/or take action against Revilla, at least for the purposes of Title IX. *See id.* at ¶ 10.

Upon review of the motion, record, and applicable law, the Court finds that Defendant's second argument has merit, and on that basis, Plaintiff's theory fails as a matter of law.[7] When determining whether a district employee is an "appropriate person" for the purposes of Title IX, the relevant question is whether the official's actual knowledge of sexual abuse is functionally equivalent to the school district's actual knowledge." *Rosa H.*, 106 F.3d at 660; *see also Floyd v. Waiters,* 171 F.3d 1264, 1264 (11th Cir. 1999) (noting that an "appropriate individual" for purposes of Title IX liability is generally a "supervisor" or a "school official high enough up the chain-of-command that his acts constitute an official decision."). For that reason, the "bulk of employees" are not covered for the purposes of a district's "notice" under Title IX. *Rosa H.*, 106 F.3d at 660; *see also Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325, 1352 n.43 (M.D. Ga. 2007) (noting that teachers, coaches or school employees are not generally "appropriate individuals" for notice purposes under Title IX).

Campus police officers present an interesting case, in the sense that they are—at least in a law enforcement sense—authorized to "halt" a sexual assault or "take action" to stop (*e.g.*, to detain and/or arrest) an abuser. In most other respects, however, school resource officers are like the vast majority of other school employees, in the sense that (i) they have no discretionary authority with respect to the district's sexual harassment policies designed to end discrimination on campus, and (ii) their day-to-day actions do not generally constitute "official decisions" by the district. For that reason, numerous courts have held that "notice" of sexual harassment or

---

[7] Defendant's first assertion is misplaced. Although it is generally true that a district may not be liable if its only alleged "notice" came via an "appropriate person" who was the perpetrator of the sexual abuse, *see Salazar*, 690 Fed. Appx. at 854-55, Plaintiff's theory asserts that Officer Hernandez was the "appropriate person" with respect to his knowledge of the sexual abuse *perpetrated by Revilla*. Thus, with respect to Officer Hernandez's knowledge of Revilla's conduct, the bar to liability described in *Salazar* does not by itself bar Plaintiff's Title IX claim based on that theory.

abuse provided to a district police or security officer alone is insufficient to provide a school district with "notice" for the purposes of Title IX. *See Ross v. University of Tulsa*, 859 F.3d 1280, 1288-92 (10th Cir. 2017) (finding that report of sexual assault to university's security officer did not constitute "notice" for purposes of Title IX); *Joyce v. Wright State Univ.*, 3:17-CV-387, 2018 WL 3009105, at *9 (S.D. Ohio June 15, 2018) (same, with respect to report of sexual assault to university police officer); *Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325, 1352 n.43 (M.D. Ga. 2007) (same).

The Court agrees with the other courts that have addressed the issue, and the Court finds that Officer Hernandez does not fit the category of employee meant to be covered by the Title IX "appropriate person" analysis. Specifically, there is no evidence that the District's or board's "practical control" over Officer Hernandez was "sufficiently close" such that his acts "reflect[ed] [the district's] intentional discrimination." *Rosa H.* 106, F.3d at 660. Further, although Officer Hernandez had the duty and authority to take action to stop crimes and/or harassment occurring on campus, such a duty is imposed—at least in some form (*e.g.*, through reporting obligations)—on the vast majority of school employees, including teachers and coaches. Thus, extending "appropriate persons" under Title IX to include any individual who is authorized and/or instructed to take any action to halt abuse—from a law enforcement perspective or otherwise—would result in nearly every district employee being covered by the analysis. Such a result would be incongruent with the applicable standard for determining whether a district can be liable under Title IX. *See id.* (noting that "the bulk of employees" are not "appropriate persons" for the purposes of Title IX "notice").

Accordingly, Plaintiff's theory regarding "notice" to Officer Hernandez fails as a matter of law because Officer Hernandez is not an "appropriate person" under Title IX. Thus, Defendant is entitled to summary judgment on that theory of relief.

## 2. Title IX Claim Premised on Principal Rodriguez's Knowledge

Plaintiff's second theory under Title IX asserts that EISD is liable because Principal Rodriguez failed to take the appropriate steps to halt the abuse perpetrated by Revilla after "Principal Rodriguez had actual knowledge of Revilla's abuse of Plaintiff." Docket no. 105 ¶ 25. Plaintiff's allegations appear to be premised on "notice" allegedly arising from: (1) a January 2014 incident that resulted in a one-week suspension of Revilla, and (2) rumors and/or reports in early 2014 regarding the relationship between Plaintiff and Revilla.

Defendant appears to concede that—unlike Officer Hernandez—Principal Rodriguez constitutes an "appropriate person" for "notice" purposes under Title IX. *See* docket no. 102 ¶ 12. Instead, Defendant seeks summary judgment on the bases that Principal Rodriguez did not receive actionable information constituting "notice" under Title IX until March 2014, and at that time, Principal Rodriguez took prompt steps to stop the abuse by Revilla. *See id.* at ¶¶ 12-14. Thus, according to EISD, the evidence does not support a finding that the District was "deliberately indifferent" with respect to Revilla's sexual abuse of Plaintiff. *See id.* at ¶¶ 14-15.

As an initial matter, Plaintiff must show that Rodriguez had "actual knowledge of the abuse" by Revilla. *Rosa H*, 106 F.3d at 660. Plaintiff first suggests that Rodriguez had knowledge based on a January 2014 investigation and suspension of Revilla. *See* docket no. 105 ¶¶ 23-24. Specifically, the record indicates that Revilla was suspended while EISD investigated a report that a male student had been dropped off at Revilla's residence. *See* docket no. 102-35 & 102-43 p. 9. However, the record also indicates that EISD conducted an investigation which

revealed that the student had his parent's permission to go to Revilla's residence (and the parent had dropped him off) because the student was working on materials for a school pep rally, which Revilla supervised as a class officer. *See* docket no. 102-36, 102-37 & 102-43 p. 9. On that basis, the investigation was ultimately inconclusive, and Revilla was reinstated the following week. *See* docket no. 102-43 p. 9. Thus, the record plainly indicates that the January 2014 incident is not the type that would place Rodriguez on notice that Revilla was engaged in sexual relations with students, and certainly not with respect to Plaintiff. Accordingly, the Court concludes—as a matter of law—that the incident did not provide Rodriguez (or the District) with Title IX "notice" for the purposes of Revilla's abuse of Plaintiff.

Having concluded that the January 2014 "notice" was insufficient, the Court next must address the "notice" that Principal Rodriguez received regarding Revilla in March 2014 and the steps that he and the District took to address Revilla's conduct at that time. Various pieces of evidence in the record indicate that Rodriguez received an anonymous tip regarding the relationship between Plaintiff and Revilla on March 24, 2014. *See, e.g.,* docket no. 102-43 p. 8; docket no. 102-47; docket no. 102-59 at 176:3-177:20.[8] Specifically, the record indicates that Rodriguez was contacted by the mother of another student who attended the school. *See id.* Following the tip, the record indicates that Rodriguez and other school officials (i) met separately with Revilla, Plaintiff and the tipster's daughter, and (ii) requested a written statement from Revilla, which Rodriguez received the next day. *See id.* Based on the inconsistencies in the statements by Plaintiff, the anonymous tipster's daughter and Revilla, Rodriguez contacted the EISD Police Department on March 26, 2014, so that they could begin an investigation. *See id.*

---

[8] Plaintiff has not raised any objections to Principal Rodriguez's nearly contemporaneous written statement, which Defendant relies upon. *See* docket no. 102-47. Rodriguez was questioned about the statement during his deposition, and he affirmed the details. *See* docket no. 102-59 at 176:3-177:20.

On the same day, Revilla submitted his resignation, *see* docket no. 102-52, and Revilla was arrested the following day. *See* docket no. 102-51. On that record, no finder of fact could conclude that Rodriguez acted "deliberately indifferent," assuming that the first actionable "notice" that Rodriguez received was on March 24, 2014.

Notwithstanding Rodriguez's actions in March 2014, Plaintiff's Motion asserts that other evidence indicates that Rodriguez had knowledge that Revilla was a sexual predator at an earlier date. However, the Court finds that the "evidence" identified by Plaintiff does not create an issue of fact as to the issue of "notice" or "knowledge." Specifically, Plaintiff directs the Court to (i) a statement by another student in a FBI interview report that "[n]umerous students from [the school] began reporting to [Rodriguez] that something was going on between Revilla and [Plaintiff]" (*see* docket no. 105-32), and (ii) a statement by another teacher in a police report stating that "she believed [Revilla's] wife had notified the principle [sic] of the school . . . of [Revilla's] status as a sexual predator however she believes that [Rodriguez] never reported [Revilla] through the school system" (*see* docket no. 105-33). *See* docket no. 105 ¶¶ 25-26. As an initial matter, the Court concludes that neither statement is competent summary judgment evidence, as both statements are inadmissible hearsay of third-party witnesses contained within otherwise admissible public records.[9] Further, *even if* the statements were admissible at this

_____

[9] Because (i) the Court can find no hearsay exception that makes the third-party statements contained in these otherwise admissible documents admissible in their own right, and (ii) Plaintiff has relied on the statements to prove the truth of the matter asserted, Defendant's Motion to Strike is **GRANTED** with respect to *these specific statements* in Plaintiff's Exhibit A-30 and A-31. The Court finds that the residual hearsay exception does not apply, as it is not clear that the information "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Notably, the student responsible for the statement in docket no. 105-32 was deposed in this case, and Plaintiff did not cite to the student's deposition for the cited proposition, despite presumably having the opportunity to obtain that testimony. Moreover, the lack of temporal detail provided in each

stage, neither statement (nor the surrounding information) provides specific temporal details such that the Court could conclude that Rodriguez failed to respond in a way that constituted "deliberate indifference." Thus, Plaintiff has failed to meet its burden of identifying competent summary judgment evidence creating an issue of fact as to Rodriguez's "notice" regarding Revilla's conduct.

For that reason, the Court will grant summary judgment in Defendant's favor on this theory of relief. However, as set forth in the conclusion of this Order, the Court will provide Plaintiff with thirty (30) days for additional discovery to be taken from those responsible for the statements in question. *See Duplantis*, 948 F.2d at 191. In the event Plaintiff obtains admissible discovery demonstrating an issue of fact as to the timing of Rodriguez's "notice" and subsequent actions, Plaintiff may move for reconsideration of the Court's summary judgment order with respect to this theory only. In the event Plaintiff provides new, admissible evidence and moves for reconsideration, Defendant will be afforded an opportunity to respond.

### 3. Title IX Claim Premised on Other EISD Employees' Knowledge

To the extent Plaintiff's Title IX claim is supposedly premised on knowledge of other District employees, the Court will briefly address why Defendant is entitled to judgment as to those theories. In the event Plaintiff (or Plaintiff's expert) contends that Officer Mark Gomez (the school's other resource officer) had knowledge of Officer Hernandez's conduct and failed to adequately respond, *see* docket no. 105-54 p. 25, the Court concludes that—for the reasons set forth in Section II.A.1, *supra*—Officer Gomez also does not constitute an "appropriate person" for the purposes of Title IX "notice." Further, to the extent Plaintiff contends that other teachers (including Yvette Black) had actionable "notice" of Revilla's inappropriate relationship with

---

statement also appears to undermine the probative value of the assertion, as both the student and teacher's statement *could* be read to refer to the March 24, 2014 notice received by Rodriguez.

Plaintiff, *see* docket no. 105-1 ¶¶ 31-34, those employees also do not constitute "appropriate persons" for the purposes of Title IX. *See Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d at 1352 n.43 (noting that teachers, coaches or school employees are not generally "appropriate individuals" for notice purposes under Title IX).

Plaintiff's contention that other senior EISD employees acted with deliberate indifference after receiving actionable "notice" also fails. Just as the January 2014 incident involving the student at Revilla's residence failed to provided Rodriguez with adequate "notice" as a matter of law, *see* Section II.A.2, *supra*, the Court concludes that the same is true with respect to that incident providing "notice" to Don Walheim or any other District employee. *See* docket no. 102-43 p. 8; docket no. 102-47. Indeed, as discussed above, EISD's human resources department investigated the allegations related to the January 2014 incident—which was factually dissimilar from Revilla's conduct involving Plaintiff—and the investigation resulted in Revilla's reinstatement. The Court finds that—as a matter of law—neither the January 2014 investigation nor the underlying conduct by Revilla would have provided Walheim or any other EISD employee with actionable "notice" for the purposes of Plaintiff's Title IX claim.

Finally, to the extent Plaintiff contends that any EISD employee with "appropriate authority" acted "deliberately indifferent" as to the Title IX "notice" that the District received regarding Officer Hernandez, the record does not support the assertion. The record indicates that it was Revilla himself that notified Walheim of the relationship between Plaintiff and another district employee, and Revilla did so as part of his March 26, 2014 resignation. *See* docket no. 102-52. The record indicates that Walheim immediately contacted police, *see id.*, and by the following day, EISD police investigators had determined that the offending employee was Hernandez. On March 27, 2014, Hernandez was suspended, *see* docket no. 102-39, and by

March 31, 2014, Hernandez had resigned. *See* docket no. 102-40. On that record, no fact finder could conclude that the District, Wilhelm, or any other District employee acted with "deliberate indifference" to "notice" regarding Officer Hernandez's sexual relationship with Plaintiff.

Accordingly, the Court concludes that—on the present record—there is no triable issue of fact with respect to whether Officer Hernandez, Principal Rodriguez, Officer Gomez, Walheim, or any other EISD employee was "deliberately indifferent" after receiving actionable "notice" under Title IX. Thus, Defendant is entitled to summary judgment on each such theory of relief, and Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's Title IX claims.

### B. § 1983 "Municipal Liability" Claims

In order to prevail on a § 1983 claim, Plaintiff must demonstrate: (1) a violation of rights secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law. *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854-55 (5th Cir. 2012) (en banc); *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008). A school district may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability for the purposes of establishing a claim pursuant to § 1983. *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403 (1997); *see also Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). However, a plaintiff may establish liability by establishing that the district itself, not the district's employees, violated the plaintiff's rights under the Constitution. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978)).

In order to impose "municipal liability" on a school district under the official policy or custom scenario, Plaintiff must prove the existence of: (1) a policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights whose "moving force" is the policy or custom.

*See Piotrowski*, 237 F.3d at 578-79 (citing *Monell*, 436 U.S. at 694). For municipal liability to attach to a municipality, the unconstitutional conduct must be "directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578 (internal citation omitted). In other words, a municipality or city may be liable to suit under § 1983 based upon a policy or custom but only if the claim is "based upon the implementation or execution of a policy or custom which was officially adopted by that body's officers." *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532 (5th Cir. 1996). Thus, consideration of the three principles of municipal liability is integral in distinguishing individual violations by employees from actions of the governmental entity itself. *Piotrowski*, 237 F.3d at 578; *Moreno v. Mcallen Indep. Sch. Dist.*, No. 7:15-CV-162, 2016 WL 3198159, at *6 (S.D. Tex. June 9, 2016).

According to Plaintiff's Complaint and summary judgment briefing, liability based on EISD's "official policies or customs" can be predicated upon three possible theories: EISD allegedly failed to institute appropriate (i) policies related to training district employees with respect to reporting sexual harassment, (ii) policies concerning the hiring or screening of new employees, and (iii) sexual harassment policies. Each theory is addressed below.

### 1. Failure to Train EISD Employees

Plaintiff contends that summary judgment is inappropriate as to her § 1983 claim premised on a "failure to train" theory, because "the training EISD provided to teachers and staffers was inadequate and caused Plaintiff Jane Doe to receive further sexual abuse." Docket no. 105 ¶ 51. Specifically, Plaintiff asserts that teacher Yvette Black (and other staff) were not properly trained in sexual harassment reporting, and thus, Black did not report "rumors"

regarding Revilla's and Plaintiff's relationship to school administrators following her December 2013 meeting with Revilla and other students regarding the "rumors." *Id.* at ¶ 52.

To prevail on a "failure to train" theory, specifically, Plaintiff must demonstrate: (1) that EISD's training procedures were inadequate, (2) that EISD was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question. *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010). In failure to train cases, the Fifth Circuit has created a burden-shifting test and has explicitly held that when employees "have received training required by Texas law, the plaintiff must show that the legal minimum of training was inadequate." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010). It is not sufficient for a plaintiff to demonstrate "that more or different training or supervision would have prevented the result," and instead, a plaintiff must demonstrate that the training was "so deficient as to constitute deliberate indifference." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 386 (5th Cir. 2005). Finally, "deliberate indifference" *generally* requires a plaintiff to show a "pattern of violations." *See id.* at 385-86. However, a single incident may be sufficient for a failure to train theory in "narrow" instances, such as when a district or municipality fails to "provide *any* training or supervision." *Id.* (citing *Cozzo v. Tangipahoa Parish Council—President Gov't*, 279 F.3d 273, 288 (5th Cir. 2002) (emphasis added in *Cozzo*)).

The record indicates that Plaintiff cannot satisfy the required elements of her failure to train theory as a matter of law. Specifically, the Court's analysis of Plaintiff's failure to train theory can start and end with the element of "deliberate indifference."[10] As an initial matter,

---

[10] To be clear, it is also not apparent that Plaintiff has created an issue of fact as to the remaining elements, *i.e.*, (i) the inadequacy of training program or (ii) direct causation. For example, Black testified that—following her meeting with Revilla in which they discussed the rumors—she tried

EISD notes that its training policies and procedures exceed those required by Texas law. *See* docket no. 102-1 ¶¶ 11-12. Specifically, EISD's employee handbook describes the reporting requirements for sexual harassment and states that "[a]ny District employee who receives notice that a student has or may have experienced prohibited harassment is required to immediately report the alleged acts to the campus principal or to the Title IX officer for sexual harassment." Docket no. 102-25. In addition, although Texas law only requires the training of new district employees,[11] EISD provided yearly, ongoing sexual harassment and child abuse training to its new *and* returning employees via online training modules. *See* docket no. 102-2 ¶ 10. The record indicates that Black, Hernandez, Revilla and Rodriguez completed these online modules (and passed the required quizzes) throughout the relevant time period.[12] *See* docket nos. 102-30, 102-31, 102-32 & 102-33.

In response, Plaintiff fails to provide the requisite evidentiary support necessary to survive summary judgment. Plaintiff's assertion regarding EISD's "deliberate indifference"

---

to find an administrator to whom she could report the allegations but that "the administrator was not available" and Black "[had] to leave" for the day. *See* docket no. 102-57 at 49:23-50:22. For that reason, she asked Revilla to report the rumors, which he had denied at the time, and he said he would do so. *See id.* Thus, the record does not clearly indicate that it was *lack of training* that resulted in Black's failure to report the allegations regarding Revilla. Similarly, Revilla testified that he was aware that his relationship with Plaintiff was impermissible, and yet, he chose to engage in that conduct with Plaintiff. *See* docket no. 102-56 at 17:7-15. Accordingly, there is no evidence that Revilla engaged in his illegal behavior because he had been improperly trained or was unaware that his conduct was inappropriate or impermissible. However, the Court need not rely on these elements as the basis of its disposition, as there remains no issue of material fact as to element of "deliberate indifference."

[11] *See* Tex. Educ. Code § 38.0041; 19 Tex. Admin. Code 61.1051.

[12] For example, during September and October 2013, just months before the meeting between Black and Revilla, Black completed the modules (and passed the quizzes) related to training on "Sexual Misconduct: Staff-to-Student," "Child Abuse: Mandatory Reporting," "Boundary Invasion," and "Sexual Harassment: Staff-to-Staff." *See* docket no. 102-33.

directs the Court to the expert report of Dr. Edward Dragan.[13] *See* docket no. 105 ¶¶ 51-53. Both

Dr. Dragan's report and Plaintiff's briefing make conclusory assertions that Defendant's training

procedures failed to follow Texas Association of School Boards ("TASB"), U.S. Department of

Education's Office of Civil Rights ("OCR"), and U.S. Department of Health and Human

Services guidelines, *see* docket no. 105 ¶ 53, but neither Dr. Dragan nor Plaintiff provide the

Court with *specific* examples of any *mandated* guidelines that have supposedly been violated by

EISD. Instead, the referenced portion of Dr. Dragan's report cites OCR guidance letters that—as

an initial matter—do not appear to be directed primarily at (1) mandating specific training

procedures and/or (2) addressing *student-on-student* harassment.[14] The letters appear to generally

state that school districts should have appropriate training procedures in place, but neither

document provides specific requirements or guidance that would demonstrate that EISD's

training of its teachers was so inadequate as to constitute "deliberate indifference." Specifically,

there is no indication that the Department of Education (or any other body) *requires* "in-person"

training or any of the other various steps that Dr. Dragan believes EISD should have

---

[13] Defendant contends that Dr. Dragan should be excluded. *See* docket no. 81. The Court need not specifically address that issue in this Order, because it concludes that, *even assuming* the report should be considered as to this issue, Plaintiff has failed to provide evidence such that there is an issue of material fact as to "deliberate indifference."

[14] Dr. Dragan cites to two U.S. Department of Education documents. *See* docket no. 105-52 p. 16 n.3 (citing Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties* (January 2001, *available at* https://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf) (the "January 2001 OCR Letter")) and docket no. 105-52 p. 21 n.8 (citing Office for Civil Rights, *Dear Colleague Letter and Guidance* (April 2011, *available at* https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf) (the "April 2011 OCR Letter")). Indeed, the January 2001 OCR Letter merely states that "schools need to ensure that employees are trained so that . . . employees know that they are obligated to report harassment to appropriate school officials," January 2001 OCR Letter at p. 13, and the April 2011 OCL Letter "focuses on peer sexual harassment and violence" and that "Schools' obligations and the appropriate response to sexual harassment and violence committed by employees may be different from those described in this letter." April 2011 OCR Letter at p. 2 n.8.

implemented. Moreover, even had *specific applicable* standards been described in detail by Plaintiff or Dr. Dragan, "an expert's comparison of a defendant municipality's policies to national standards and model policies cannot, by itself, establish municipal liability." *Escobar v. City of Houston*, 2007 WL 2900581, at \*35 n.6 (S.D. Tex. Sept. 29, 2007) (collecting cases). It is also insufficient for Plaintiff to merely demonstrate that more or different training or supervision may have prevented a violation of Plaintiff's rights. *See Estate of Davis*, 406 F.3d at 386.

In sum, the record evidence cited by Plaintiff falls far short of establishing the "deliberate indifference" necessary with respect to Defendant's training of its teachers regarding sexual harassment reporting requirements, and this is especially true in light of the training that Defendant did have in place and that Revilla, Hernandez, Black, and others received. Moreover, Plaintiff has failed to identify a "pattern of violations" traditionally required in order to satisfy the "deliberate indifference" requirement for a "failure to train" claim. *See Davis*, 406 F.3d at 385-86. Instead, Plaintiff appears to rely solely on the single incident, and Plaintiff has failed to meet the high evidentiary bar—such as the failure to implement *any* training—that is required for the application of that "narrow" single-incident exception. *See id.*

To be clear, it appears evident that Black should have reported any "rumors" regarding Revilla's and Plaintiff's relationship to a school administrator. However, the record does not provide the evidentiary support necessary to create an issue of material fact with respect to Plaintiff's "failure to train" claim against EISD, and thus, Defendant's summary judgment motion is **GRANTED** as to that theory of relief.

## 2. Official Policies Regarding the Hiring and Screening of New Employees

Plaintiff asserts a § 1983 claim on the basis that EISD implemented insufficient policies and practices for screening new employees, and as a result, EISD failed to properly screen Hernandez's background and Plaintiff's rights were violated. *See* docket no. 47 ¶¶ 81-91.

The Supreme Court has set a high bar for § 1983 claims based on hiring decisions, and the requirement that the policy or custom be a "moving force" resulting in the alleged violation of constitutional rights requires Plaintiff to show more than just "but-for" causation. *See Bryan County*, 520 U.S. at 410-11. In *Bryan County*, the Supreme Court specifically discussed § 1983 liability in the hiring context. The Supreme Court stated:

> To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged . . . . "[D]eliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of [its] action.

*See id.* at 410-11.

To succeed on her claim, Plaintiff must demonstrate that the allegedly inadequate hiring policies and screening practices were adopted with "deliberate indifference" to the "obvious consequence" that a violation of a specific constitutional right would occur. *See Snyder v. Trepagnier*, 142 F.3d. 791, 795-96 (5th Cir. 1998) (plaintiff "must establish that the city consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens"). The Fifth Circuit has stated that *Bryan County* underscores the need for "plaintiffs to establish both the causal link ('moving force') and the [municipality's] degree of culpability ('deliberate indifference' to federally protected rights)." *See Snyder*, 142 F.3d at 796. Thus, "[i]n order for municipal liability to attach, plaintiffs must offer evidence of not simply a decision, but a decision by the [municipality] itself to violate the Constitution." *Gonzalez v. Ysleta Indep. Sch.*

*Dist.*, 996 F.2d 745, 759 (5th Cir. 1993) (internal quotations omitted). "A showing of simple or even heightened negligence will not suffice." *Bryan County*, 520 U.S. at 407.

"To test the link between [the department's] hiring decision and [plaintiff's] injury, [the court] must ask whether a full review of [the officer's] record reveals that [the department] should have concluded that [the officer's violation of plaintiff's rights] would be a plainly obvious consequence of the hiring decision." *Bryan County*, 520 U.S. 397 at 412-13. The connection between the background of the particular applicant and the specific violation alleged must be "strong," and plaintiff "must show that the hired officer was highly likely to inflict the particular type of injury suffered by them." *Gros v. City of Grand Prairie*, 209 F.3d 431, 434 (5th Cir. 2000). Accordingly, numerous courts have granted summary judgment where plaintiffs have failed to identify factually similar incidents in the employee's prior employment or criminal history. *See, e.g., Bryan County*, 520 U.S. 397; *Snyder*, 142 F.3d. 791; *Hardeman v. Kerr County Tex.*, 244 Fed. Appx. 593 (5th Cir. 2007).

Plaintiff contends that EISD's inadequate screening procedures resulted in the hiring of Hernandez, notwithstanding the fact that Hernandez's prior employment records indicated that he (i) had been suspended by the SAPD after an incident involving the sexual assault of a minor for which he was charged with "official oppression," (ii) had been fired by the UIWPD for sexual harassment of an adult and other department violations, and (iii) was known as a "womanizer" while serving as an officer for the TSUPD. *See* docket no. 105 ¶¶ 37-38. Plaintiff asserts that, in light of this background, the "obvious consequence" of failing to adequately screen Hernandez's prior history is that a minor student—such as Plaintiff—would be sexually harassed and/or assaulted by Hernandez. *See id.* at ¶ 40.

EISD responds by asserting that its hiring policies were "constitutionally acceptable." *See* docket no. 102 ¶ 19. Moreover, Defendant contends that Hernandez's employment and/or criminal history does not contain an incident similar enough such that the requisite "strong connection" exists. *See id.* at ¶ 24. In doing so, Defendant argues that (i) Hernandez's employment record indicating he was suspended and charged with "official oppression" based on sexual assault of a minor is irrelevant because he was subsequently acquitted of criminal charges related to the incident (*see* docket no. 109 ¶ 12), and (ii) Hernandez's more recent termination by UIWPD based on unwanted sexual advances should be distinguished because the advances were not made towards a minor *(see id.* at ¶ 13).

As an initial matter, the Court must consider whether Defendant conducted inadequate screening during the process of hiring Officer Hernandez. The record indicates that Defendant did not call or personally interview any of Hernandez's references, nor did Defendant investigate why Hernandez (i) provided only two of the three required references (*see* docket no. 105-9 at 52:9-13), or (ii) named his brother as one of his references (*see* docket no. 105-11 p. 8). Although Defendant received a positive letter of reference from one of Hernandez's prior supervisors at the UIWPD (*see* docket no. 102-11), Defendant failed to contact Hernandez's prior employers. This meant EISD did not inquire as to Defendant's "official oppression" charge (*see* docket no. 102-14) (a charge often associated with sexual assault or harassment)[15] or the corresponding gap in his service at SAPD (*see* docket no. 102-9), nor did EISD learn that Hernandez had recently been fired by the very department for which he submitted a positive reference letter after he made unwanted sexual advances towards a subordinate (*see* docket no. 105-7). Finally, Don Walheim (Defendant's former in-house counsel) conceded that Hernandez

---

[15] *See* Tex. Penal Code § 39.03(a)(3).

should not have been hired based on the information in his background. *See* docket no. 105-17 at 91:1-13. Based on the above, the Court finds that there is a genuine issue of material fact remaining as to whether EISD's screening of Hernandez was inadequate. However, that conclusion only matters if Plaintiff can also demonstrate that there is also an issue of material fact as to whether (i) the District acted with "deliberate indifference" and (ii) the inadequate screening of Hernandez's record was a "moving force" behind the violation of Plaintiff's rights.

Defendant contends that no such "strong connection" exists between Hernandez's prior incidents and the specific violation of Plaintiff's rights at issue, and thus, Plaintiff cannot satisfy the "deliberate indifference" or "moving force" requirements. *See* docket no. 102 ¶ 24. In support, EISD cites a few cases in which courts have found that a "strong" connection did not exist, and EISD contends that like the defendants in those cases, it is entitled to judgment as a matter of law. *See id.* at ¶¶ 21-24.[16]

In this case, unlike in the cases cited by Defendant, the record indicates that there may have been "strong" similarities between Hernandez's prior conduct (in particular, the "official oppression" and UIW sexual harassment incidents) and the harm suffered by Plaintiff. In that way, the Court finds that these facts are more similar to those evaluated in *Ling v. City of Garland*, a case out of the Northern District of Texas. *See* Civil Action No. 3:05-CV-1754-P, 2007 WL 9712236 (N.D. Tex. Feb. 23, 2007). In *Ling*, the record indicated that the offending officer had been disciplined by another police department eighteen years earlier for a "nearly identical" use of excessive force as the one plaintiff alleged. *Id.* at *9. That prior incident—paired with numerous other red flags in the officer's prior employment history—were enough that "a reasonable jury could find that, upon a review of [the officer's record], the plainly

---

[16] Defendant tries to draw parallels to the following cases: *Brown*, 520 U.S. at 415-416; *Rivera v. Bonner*, 691 Fed. Appx. 234, 238-39 (5th Cir. 2017); and *Hardeman*, 244 Fed. Appx. at 596.

obvious consequence of hiring [the officer] would be his subsequent use of excessive force" against the plaintiff. *Id.* On that basis, and notwithstanding the court's acknowledgment that the "causal connection" between an applicant's history and the constitutional violation must be "very similar," the *Ling* court concluded that a genuine issue of material fact remained as to whether the municipality's hiring decision was the "moving force" behind the alleged constitutional violation to the plaintiff. *Id.*

Here, a more detailed review of Officer Hernandez's background would have indicated that Officer Hernandez had been found guilty *by the department* of a violation of department rules and regulations, during his prior employment with the SAPD. Specifically, the background information on Hernandez indicates that he was found guilty by the Firemen's and Policemen's Civil Service Commission of "unbutton[ing the] shirt" of a minor he had arrested, "kissing and sucking on her breast," and "attempt[ing] to touch her 'crotch' area." *See* docket no. 105-4. An investigation would have also revealed that Hernandez was suspended from the police force for the violation. *See id.* It is true that a thorough search of the record would have ultimately indicated an acquittal for the related *criminal charge*, but the present record does not indicate why Hernandez was ultimately found "not guilty,"[17] nor does it mean the administrative adjudication and suspension related to the charge has "no probative value," as Defendant asserts in its Motion to Strike.[18] Indeed, although TASB policy would not have permitted the District to

---

[17] For example, the jury's acquittal may have been based on the jury's conclusion that the assault in question never occurred, *or* it have been based on the heightened burden of proof in the criminal context or on any number of other procedural or evidentiary circumstances. A dive into Hernandez's prior record may have revealed such details.

[18] For that reason, Defendant's Motion to Strike is **DENIED** as to Plaintiff's Exhibits A-2 and A-3, which Defendant asserts are non-probative because Hernandez was ultimately acquitted of criminal charges. An officer's employment history and suspensions are certainly probative, regardless of whether the officer was ultimately *criminally* convicted based on the conduct. To the extent Defendant has concerns about the balance of the probative value versus prejudicial

disqualify Hernandez *solely* because of his prior arrest, the policy explicitly states that the "District may make an employment decision based on the conduct underlying the arrest if the conduct makes the person unfit for the position in question."[19] Docket no. 102-17. Moreover, a more detailed review of Hernandez's prior history would have revealed that Hernandez had recently been terminated from his prior job after making unwanted sexual advances towards a subordinate (*see* docket no. 105-7), and the Court declines to adopt Defendant's contention that the incident should be ignored because the victim on that occasion was an adult, rather than a minor (*see* docket no. 109 ¶ 13).

When viewing the facts and drawing the associated inferences in the light most favorable to Plaintiff—as the Court must do at this stage—the Court cannot conclude as a matter of law that an employer with knowledge of (i) SAPD's disciplinary action against Hernandez related to highly-similar allegations of a potential sexual assault of a minor, (ii) Hernandez's related arrest for "official oppression," (iii) Hernandez's more recent termination from UIWPD based on unwanted sexual advances made towards a subordinate, and (iv) the numerous other incidents reported by Hernandez's prior employers,[20] would not have realized that the "obvious

---

effect or how the information should be provided to the jury, those issues may be addressed at trial.

[19] TASB policy further instructs the District to "disqualify from employment a person whose criminal history indicates that the person poses a threat to students or employees." Docket no. 102-17.

[20] Defendant's Motion to Strike correctly notes that the incidents occurring while Hernandez was employed UIWPD or TSUPD did not involve the exact allegations that are present in this case, specifically, the sexual assault of a minor. *See* docket no. 106 ¶ 4. However, Defendant's Motion to Strike Plaintiff's Exhibits A-5 and A-10 is **DENIED**, because the information regarding his employment history and/or termination from other departments may be relevant when considered *in addition to* and *in conjunction with* the prior information regarding Hernandez's alleged sexual assault of a minor. *See Ling*, 2007 WL 9712236, at \*9. Finally, to the extent Defendant contends that specific portions of the official records include hearsay, *see* docket no. 106 at ¶ 4, a specific objection may be raised at trial should Plaintiff seek to utilize those statements for an impermissible purpose.

consequence" of hiring Hernandez would be the deprivation of a student's federal rights in the manner alleged by Plaintiff. Put another way, a reasonable jury could find that (i) the District's hiring decision was a "moving force" behind the violation of Plaintiff's rights, and (ii) the District's screening of Hernandez rises to the level of "deliberate indifference." *See Snyder*, 142 F.3d at 796; *Ling*, 2007 WL 9712236, at *9.

For that reason, the Court cannot find—as a matter of law—that Defendant is entitled to judgment as to Plaintiff's claim premised on EISD's hiring practices. Accordingly, Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's § 1983 claim based on EISD's hiring and screening of new employees.

### 3. Official Policies Concerning Sexual Harassment and Child Abuse

Defendant's Motion for Summary Judgment also seeks judgment as to Plaintiff's § 1983 claim premised on Plaintiff's allegations that the District adopted inadequate official policies regarding sexual harassment and sexual assault. *See* docket no. 102 ¶ 18. Plaintiff's response to Defendant's summary judgment motion indicates that Plaintiff is withdrawing her claim asserting that EISD implemented inadequate sexual harassment policies. *See* docket no. 105 ¶ 55.

Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's § 1983 claim premised on EISD's allegedly inadequate sexual harassment policies.

### CONCLUSION AND ORDER

For the reasons set forth above, Defendant's Motion for Summary Judgment (docket no. 102) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's § 1983 claim premised on EISD's hiring and screening of employees and **GRANTED** as to Plaintiff's other claims.

As set forth in Section I and notes 9, 18 and 20, *supra*, Defendant's Motion to Strike (docket no. 106) is **GRANTED IN PART** and **DENIED IN PART**. The Court's denial is without prejudice to Defendant raising specific objections regarding each document should Plaintiff attempt to use the document(s) for an impermissible purpose at trial.

**IT IS FURTHER ORDERED** that, in light of this Order and the fact that only one of Plaintiff's claims remains, the parties' expert challenges (docket nos. 81, 82, 87 & 88) are **DENIED AS MOOT** and **WITHOUT PREJUDICE**. The parties are ordered to confer as to which expert issues still must be resolved in light of this Order, and the parties shall make a meaningful effort to resolve any dispute as to the issue. To the extent the parties require Court resolution of any pending expert issues following their attempts to confer, the parties may refile amended and/or narrowed motion(s) for the Court's consideration. Any such motion(s) shall be filed within thirty (30) days of the date of this Order. Should either party file such a motion, the opposing party may have seven (7) days to file a response.

**IT IS FURTHER ORDERED** that, as set forth above in Section II.A.2, Plaintiff shall have thirty (30) days to attempt to procure admissible non-hearsay evidence supporting her Title IX claim premised on Principal Rodriguez's alleged "notice" and failure to respond to information regarding Revilla. Should Plaintiff procure additional *admissible* evidence that Plaintiff contends creates a genuine issue of material fact as to that claim, Plaintiff may—by the same deadline—file a motion for reconsideration *as to that claim*. In the event Plaintiff files such a motion for reconsideration, Defendant may have seven (7) days to file a response.

**IT IS FURTHER ORDERED** that, in light of the above additional discovery, expert briefing, and/or reconsideration briefing that may occur, the April 10, 2019 and April 15, 2019 pre-trial conference and trial settings are hereby **VACATED**. Revised pre-trial conference and

trial settings will be issued following the Court's resolution of any motion for reconsideration and/or the parties' challenges to designated experts.

It is so **ORDERED**.

**SIGNED** this ___ day of March, 2019.

_____
HON. ORLANDO L. GARCIA
CHIEF UNITED STATES DISTRICT JUDGE